v. Virginia v. Pietrobon. Hear ye, hear ye. This Honorable Appellate Court for the Second District is now open. The Honorable Justice Susan F. Hutchinson presiding, along with Justices Donald C. Hudson and Liam C. Brennan. The case is number 220174, the City of West Chicago Plaintiff Appellant v. Virginia v. Pietrobon, Defendant Appellee. Arguing for the Appellant, Mary E. Dixon. Arguing for the Appellees, James J. Siption. Good morning, Counsel. Thank you for joining us in this fashion. And, Ms. Dixon, when you are ready, you may proceed. Thank you, Justice Hutchinson. May it please the Court, my name is Mary Dixon. I represent the City of West Chicago. The City requests that this Court reverse the judgment of the trial court granting the Defendant's Traverse a motion to dismiss, as it is against the manifest weight of the evidence. As Justice Hudson knows, this action comes to the Court for a second time in that he wrote the opinion in what I will refer to as City of West Chicago v. Pietrobon or Pietrobon 1. At issue is a complaint for condemnation filed by the City of West Chicago to acquire private property in the City, which is owned by the Defendants, for the construction of a public road to be known as Recre Road. In response to the filing of our complaint, the Defendants filed a Traverse a motion to dismiss, alleging that the taking of their property was not for a public purpose and was not necessary for the purpose for which it was sought to be taken. Ms. Dixon, if I can jump in with a threshold question on that issue, which seems to be one of the overarching questions. What is the specific public purpose that you are pointing us to, to justify the taking of the property there? The property is being taken so that the City can have constructed a public road, which will be known as Recre Road. The public road will be 66 feet in width from side to side, and it will extend the length of 1400 feet from Illinois 64, which is known as North Avenue to South 1400 feet. And it will connect properties on both sides of the property, to the east and the west, to North Avenue, which in 2011, the Illinois Department of Transportation, in the reconfiguration of North Avenue, in an understanding that this property was a public road, IDOT did construct a full access interchange at this intersection, allowing unfettered right and left in and out, and it would lead to a signalized intersection at this intersection in the future. So there was sort of a historical misunderstanding of whether or not this was a public road, not only involving IDOT, but the City of West Chicago, as well as Conte, correct? That's correct, Your Honor. As early as 1945, this roadway was called out in a plat as a public road. Since 1945 to up to 2014, the understanding of the City of West Chicago was that the property at issue was within the public domain. That led to a 2004 annexation agreement with the A.A. Conte property, where the A.A. Conte, as a developer property in the city, agreed, as many developers do to promote development, it agreed that it would construct the public road that the city had long planned to be built in this property. So as part of the annexation agreement with A.A. Conte, A.A. Conte was going to build the public road the city had long planned on. It was only in 2014, when the plan was moving forward, that Petrobon and the city came to the realization, or I should say the city came to the realization, that the property at issue was private property owned by the Petrobon family. Has A.A. Conte, Ms. Dixon, has A.A. Conte ever submitted development plans for the property yet? For the roadway or for its own development? The roadway. Well, the plans have not been submitted for the roadway, but we know that the roadway has to be constructed to city standards. So while there might not be engineering plans for the road, it's very clear that the city standards for public roads do require and will be required for this roadway. So it's actually not necessary at this time in my belief that actual construction plans exist. What is necessary is for the understanding that the road will be built to city standards and those city standards will be as the city engineers determines best for the city because it is going to be a public road. Now the road, as defendants will argue, the road will serve the development of the A.A. Conte property. That is absolutely true. At the time of the annexation of the 37 acre parcel into the city of West Chicago, there was an understanding by both parties. One, that the road was that the property was in the public domain, but secondarily that Requi Road would serve as the ingress egress to the 37 acre development. And that is because it does provide the best access to North Avenue. And now, particularly because IDOT has aligned it to be a full access interchange and with the potential to be a signalized intersection, it only makes sense if you're going to have 37 acres under development as a business park in the city, you want it to have the best ingress egress. Let me ask you sort of a pointed question. In reviewing the letter opinion of Judge Popejoy, he references the fact that there was a obviously an agreement between A.A. Conte and the city of West Chicago. And pursuant to the agreement, the city is contractually obligated to acquire the street so that Conte may develop and use the road for its own business purposes. And he makes a statement, it's not a tool for municipalities to fulfill their obligations to benefit private parties. How do you respond to that finding? I believe that Judge Popejoy is in error in making that statement. He alludes that the actual condemnation of the property was a sham to only to benefit Mr. Conte and the development of that property. In fact, if you look back into the public record, which we've addressed, the city had long believed that this property was property to be developed as a public road. In seeking to acquire the property now, that was to realize the city's long held belief that this was public property eligible to be developed as a major roadway, which could serve the Conte development. As it does with many developers, when a developer comes in and needs public infrastructure to be built to serve its development, it's not unusual for municipality to put the financial burden of the construction of the public infrastructure on the developer. That doesn't mean that the infrastructure is solely for that private developer. It means that the developer is recognizing the public infrastructure will serve its development and the city as a whole. So in this case, it's not unusual for the city and the developer to have agreed that a Conte would build the road, but it would build the road within right away owned by the city. According to city standards that the use of the property would be public in all nature and not solely for their own private property, and that the use of the road would be free and unfettered to every resident of the city and any person wanting to access either the business park to be developed or the defendants property, they're going to be any gate mistakes and on this property. Is it going to be dated. No, no, there will be, as opposed to, you know, the trial court, in its opinion, relied on three cases, and one of the cases was one that I had cited which was city of Chicago versus the Carol, which I cited for general reasons in which the court held that if the right of condemnation is not being abused the court cannot deny the right to condemn on the ground that the exercise of power is unnecessary or not expedient. That's one of the arguments that defendants made, we don't have a current use for the roadway. That's not good enough, because the power to determine need is vested in the legislature or the legislature legislative branch of government in this case the city of Chicago. And you're familiar with the Southwestern Illinois Development Authority versus National City case. Yes, this is another case that you distinguish the situation here from the situation in that case, completely different. I've argued this continuously in Sweden, the one of the major differences between Sweden and our case is that in Sweden, the condemning authority was clearly and unequivocally acquiring private property solely to transfer title to that private property to a private So, when you look at the facts there, public acquisition of private property merely to serve a private developer, who is going to charge a fee for the use of land that had been acquired by the municipality or by Sweden in this case to do that. Here, the city is seeking to condemn private property, so that it can have constructed on its property, a road, the title to the road will remain in the city of West Chicago, when the road is built, the road itself becomes part of the city's title property, there will be no fee to anyone to be able to access this property, and it will be able to be used by anyone, including defendants. I would agree with you, it isn't a perfect comparison, and what West Chicago did here is not nearly as outrageous for lack of a better word, but what do you say to the argument that the absence of well-developed plans supports the inference that the taking is not for public use? Well, I suppose that depends on what developed plans we believe need to be in place. If it's a road, if it's the plan for the roadway, there is a plan for the roadway, it doesn't have to be court, I don't have a single court case that says you have to have a fully engineered constructed engineering plan for construction of a roadway. Here, the plan for the roadway is very clear, it's a 66 foot right-of-way, it'll run 1400 feet in length, it will be built to- I would suspect, my question wasn't about the plans for the roadway, it was about the plan for the development that the road is going to serve. Okay, even in that, we know many things about that property. It's 37 acres, it's to be built as a private business or as a business park in the city of West Chicago. Within the annexation agreement itself, which is part of the record at sub C pages 53 to 87, the annexation agreement does itemize certain of the construction plans for the property. We know that as a business park, we know it's what its zoning is going to be, it's going to be manufacturing. Now true, what had occurred at the time of the condemnation was a grading plan and some infrastructure for stormwater, but there's no requirement in Illinois law that it be more than that. As a matter of fact, in one of the cases that we cite, which is the Alsop Park District case, in that case, the court clearly says that you actually don't need a specific- in that case, I do want to separate that case a little bit because in that case, the court was concerned about the development plan for the property being taken, which was to be for a park. And the court said, well, it didn't matter if there were specific plans for the park, the taking was still appropriate. In this case, the court has shifted its focus, the trial court shifted its focus from, is there a plan for the construction of the road to is there development occurring next door, which would require the public road. So it really doesn't- the only time that comes into play is if a court could say you don't have a current need for the road. But Illinois law also holds relative to planning for construction, particularly of roadways, that the condemning authority should anticipate future increased demands for the public use to which the land will be devoted. That's from the Illinois Supreme Court in Vaquero. The two other cases cited on that point all talk about we can't hobble a condemn-nor to present facts. You can't say to a legislator, your planning has to be static at the moment. The cases say a condemning authority has the right and the obligation to its residents. Even if the road was in the public domain, wants the road to be built because it'll foster development of a 37 acre business park and may open the rest of this area to development. So in seeking to acquire the road now, the city is looking to the future. It's looking to the future expansion of this area of the city of West Chicago into a major manufacturing property for which the property is zoned. It's zoned in that area for manufacturing, for light industrial, for business. So the city is doing everything it can. Yes, ma'am. What if the A.A. Conte group chooses not to develop that 37 acres? Their annexation agreement suggests that they should, and that was their intention, but does it say they must develop it? There is always, you know, as we know from particularly the last year, there are always outside influences that affect development. The city is doing what it believes best for the city, which is with the development, with the developer in place. We know that the development is to be a business park. We're trying to provide a road that'll serve both that business park and its development, all the customers, all the future owners, all of the trades that might be going in and out of park and other areas onto the defendant's land. You can't hobble. I don't believe it's appropriate to hobble a municipality in its future planning on, well, there is a possibility development might not occur because it does happen, but you do always have to plan for it for growth in your community. It's proper forward planning, and that's exactly what the city has done in this case. One more question then. West Chicago may not have a specific plan for the city. What do they show as the general plan for the city in the next 10 years for that property? I have to apologize. You froze for a moment, but if I, if I caught enough of it, the development plan is some modern miracle of communication. Yes, the development plan is for a business park. That is what the city and the owner of the property envision, and that's what this planning is in hopes of becoming reality. So, there may be minor modifications to the plan in the future, but most developers want to proceed with development that brings back the benefit to themselves and the city of course wants to foster development. That's a benefit to the city and its residents. So, while we might face face some hurdles because of economic downturn, and every community face problems with that, but it didn't stop forward planning, and it didn't it didn't stop a city from wanting to make sure that we had proper infrastructure in place to be able to address all of the development that we hope occurs to in this case we do hope that the county goes forward with its development, and we would be encouraging that is the city projecting any specific income via tax revenue or anything from that property that they put a record at this point. There was nothing put in record relative to future tax income but I think that your honors have all had enough work in real life experience to know that if there is land that is vacant or put to one use that is then translated to a higher use the, the hope is that the development of the land will result in an increased financial benefit to the city and its residents and bring in people. I mean it's not all about it, we are hoping to foster development of the land to bring in more businesses more growth, you know more of a. We are a community seeking to grow. And this is a good place for development and it was recognized in 2004 when the city entered into the annexation agreement, and it's why the city is fighting so hard now to realize and understanding from the 1940s, that this was to be a public road to actually have that be brought to fruition. If I say, if the annexation was based upon the fact that this road was a public road, or was designated as a public road, and in fact it is not. Doesn't that impact the actual annexation, because it was accomplished under inappropriate. I don't want, I don't want to use the word false premises but unreal premises that that don't exist that that road just isn't a road. Right. And, and I think both. If, if your honors are familiar with the record, both the city and a county believed that this property was within the public domain. And that is why it's not necessarily to satisfy a contract with a county that the city sought to acquire the property, but it is to, to do what the city thought, which is to bring this property into the public domain. And as a result of the property being within the public domain, a country then does bear the contractual obligation to construct a public road for the city that will allow for expansion and development of the property. So, I think that the city as well within its right to want to acquire the property, and it won't go without paying for the property is, as you know, we're seeking remand that we're seeking a reversal of the trial courts decision to to deny or to dismiss the case, and in fact be remanded to the trial court so that we can move forward with evaluation of the property so that the private property owner will be compensated for the loss of the property which is the one last point I guess I want to make is the hearing that there was an abuse of discretion by the city of West Chicago in determining that this property was necessary. That's, that's key to what the reasons for Judge Hudson Justice Hudson's decision, which was agreed to by the, by the panel at the time that the case should be remanded. So the question here is, did the defendants provide clear and convincing evidence of an abuse of discretion. If they didn't, then the court should not look into the purview, or the legality of the city's legislative determination that the property is in fact subject to condemnation as being necessary for a public road. And that's, that's a perfect spot to tell you your time is up, and Mr Simpson, can I, I assume can answer or answer the question for his client on his reply. So you will have an opportunity for rebuttal if you so choose when he is completed. Thank you. Thank you. All right, Mr Simpson take yourself there you go take yourself off mute and you may proceed. Well, good morning. Thank you. May please the court. My name is Jim session. I represent the Apple leave Virginia Peter bone, who is the trustee of the trust that owns this subject property. And today we are asking this court to affirm the circuit courts granting of the traverse and motion to dismiss and specifically the circuit courts finding is a trier of fact here that the Peter bonds established through clear and convincing evidence that the city's proposed taking is not necessary for any public purpose. Mr Simpson can we start out with the fundamental question how did the city, how did the city, or I should say the defendants carry the burden of establishing the evidence here was overwhelming. If you look at the testimony, and you look at the record, and you look at the city administrators testimony that that was offered. He was asked about why was this property taken. And the first thing that repeatedly came out of his mouth was, we had an obligation for an annexation agreement with the property owner to the west, the counties that the road would be constructed. His answer was repeatedly that this taking was to fulfill a private contractual obligation, and then he was asked repeatedly about economic development. And he admitted on the witness stand that there were no development plans for this property when Conti approached the city about annexation, and you would agree that there's no legal requirement is there as a prerequisite you must have, in all cases development plans to justify the taking. You may not need to have a written out fully executed development plan, but you do have to have a plan. You have to have some concept, you have to be able to articulate what the development is. And Mr Gutman could not. He was asked repeatedly, and he admitted repeatedly that no development plan has ever been submitted in this case. He admitted on the stand that there wasn't even a concept plan for the development of this property. He admitted that no end users had been identified for this property. He even said that he was not aware of any development plans in their preliminary stages, he could offer nothing about an economic plan or development plan in this case, and I don't know if it was really disputed by anybody but isn't a court entitled, looking at the case to take into consideration the future needs and the future developmental requirements, even without a plan. If somebody can articulate a future need, and that need is supported like in the cases that mistakes and sites with some sort of study or finding or concept. Sure. But in this case, there was none of that. The best that the city could muster is to offer a single sheet of paper from 2006 a color coded map that listed different areas of the city of West Chicago, and different uses that might be applied to those for for for eminent domain. And I think what is critical is that if you look at pages are 60 and 61 of the record. After Mr. Gutman asked answered the initial question why do you want to take the property, and he said, well we have an obligation of a private contractual to also fulfill any future land planning for the city of West Chicago, to have that property under public control, a very leading eating easy question for Mr. Gutman to answer and you know what he said in response, he said, Yes, we hoped for there to be a nice public purpose. It is constitutionally infirm to argue that a hope is a public purpose. And I heard repeatedly while Miss Dixon argued with all due respect, the word hope throughout her argument that we hope to do this, and we hope to do that. But Justice Hutchinson asked a very pertinent and pointed question. What if they choose not to develop the property, because it seems like right now this could go either way. And that was a very good question to which an answer has not been provided. I hope I have another very good question. And that is, how exactly are you, how will West Chicago attract these businesses that the a Conti group is going to make plans or make pads for the development. If they can't see how they're going to get into that property. Don't they need that road. Somehow right now it has a gate on it at least that's my understanding, but don't they need a road to get in there to see what that property holds for them. Well, first of all the county, the evidence at trial was that the county property already has a road, they already have a road for ingress and egress to their property, as far as taking someone's private driveway. There needs to be a public purpose attached to that. And the only arguments that were advanced here was one that there was some sort of economic development in the future that would be served by this, and that wasn't presented at the evidentiary hearing. And then the other argument was that well, we're going to make it a public road and everybody can use it. And the city claims that, well, we can take the driveway because all the members of the public will be on it. But that begs the ultimate question of whether the general public's unfettered right to use the driveway is necessary and in furtherance of any public purpose in the first place and as this, the circuit court found here, public travel on the driveway is not necessary because the driveway leads to nowhere. As Victor Petroban testified, it's basically the front door of our farm. It leads from North Avenue to our front door. And under the city's argument, anybody could come in and take anybody's private driveway that leads to my garage or my front door, simply because they say, well, everybody can use it. We can have people park on it. We can have people drive on it. We can have people walk on it. We can have people walk through your living room after the driveway too, because it's easier to get to the neighbor's property. We don't have to take the streets and go around the block. There has to be a public purpose. The taking has to be necessary to further a public purpose. And that wasn't articulated at the hearing. And another important point in furtherance of that is the standard of review and the lens with which this court reviews the circuit court's decision. The standard is manifest way to the evidence. And an order on a bench trial is against the manifest way to the evidence only if the opposite conclusion is clearly evident or stated another way, if on the hearing of the evidence, no reasonable person would reach the conclusion that the trial court did. That is a highly, highly deferential standard. And it's highly deferential because as this court has said over and over again, and the Supreme Court has said over and over again, the trial court is in a superior position to judge and observe the credibility of the witnesses while testifying and determine their credibility. And that's what Judge Polkjoy did here is not this court's function to hold a trial de novo and look at the evidence and say, well, we think that maybe a different conclusion could have been reached. It's only if no reasonable person could agree with the trial court's findings on the evidence that here it was highly probable that this taking was not necessary for a public purpose. And a reviewing court will not overturn a trial court's finding merely because it does not agree with the lower court or because it might have reached a different conclusion. And that's important because I repeatedly hear arguments in this case, as I read the city's brief and I listened to Miss Dixon's argument that are an attempt to essentially retry this case and reweigh the evidence. Judge Polkjoy did that and his weighing of the evidence is entitled to deference. Judge Polkjoy's ruling just put an awful lot of emphasis on the absence of a well-developed plan to show a public purpose. Why isn't the rezoning of the A.A. Conte property to manufacturing or light manufacturing and the need of the need of a road to access this light manufacturing a sufficient public purpose. I mean, I know there's other ways into the A.A. Conte property, but they aren't going to be access to the manufacturing from both east and westbound North Avenue. So clearly, the road we're talking about is a more desirable and more likely to foster manufacturing development. Why isn't the rezoning enough to show a plan for purposes of suggesting this is for public use? Because the rezoning is not linked to anything that would serve the public at large or the public in general. I can have my property rezoned from residential to business, and it may just benefit me as a private landowner. But clearly, if we have 37 acres of light manufacturing with jobs and sales tax and increased property tax because of a higher use, that does benefit the public in ways that the case law contemplates. Well, I would respectfully disagree that it generally benefits the public. It may benefit Mr. Conte's concrete crushing business, which he wanted to operate on the property. It may benefit a road, may benefit his property by getting his trucks in and out of there. But there's no economic plan. And by the way, at the trial, the zoning wasn't used or argued or articulated as part of the public purpose that they were advancing. The argument in the briefs has been, well, this is being taken for a public purpose because we're going to let everybody use the road. And there's some sort of economic development afoot here. And the evidence at trial just didn't add up to that. In City of Chicago versus Eichinger, a case that actually allowed the condemnation to go forward and was cited by Judge Popejoy said a telling feature of sound public use in the context of economic redevelopment is the existence of a well-developed publicly vetted and thoughtful economic plan. There wasn't any evidence at the trial in this case presented of that. There was a single sheet of paper that was prepared in 2006 that nothing has been done with. And the testimony of the city's own witness said this was a hope. This was a hope that they maybe someday would have a business park. But there were no traffic studies done with this road. There was no planned unit development. There was nothing in the way of showing even a conceptual design or plan for a business park. This was lip service, and the evidence really pointed to the real reason for taking this property was because the city did make a mistake. And they entered into a private agreement with Conti thinking that this road or this driveway to the Peter ponds front door was a public road, and they promised Conti to build a road, and when, and when Mr government was asked why did you take the property And, you know, the court in Sweden said, you know, eminent domain needs to be exercised with restraint, you know, not abandonment, and this was abandonment, and even the other evidence, which is cited to in the briefs that that they claim supported some sort of public purpose here is inflated and over exaggerated. And again, we're not retrying the case here, but but just look to this whole notion that well Mr Conti was grading the property, and he was preparing for stormwater detention, and that was in buildings that were depicted on that plan. Mr government was asked, and he was, he rejected the city's attempt to characterize Conti's grading of his property for stormwater detention is some sort of commitment to develop the property. He said that the grading plans depiction of the building was not a commitment to develop any buildings. He answered no to that question, and he said that that those buildings are merely there to show the amount of impervious soil to do the stormwater and flood calculations. Once again, Mr government their own witness rejected the notion that there was any sort of plan here, and that there was any sort of public purpose or economic development that would be furthered by taking the private driveway for the Peter bones property. And yes, there was an ordinance, and this case was remanded in order to determine whether the presumption created by the ordinance was overcome. But as we cited in the Reed Custer decision once a party introduces evidence contrary to a presumption, the bubble bursts, and the presumption vanishes. And after the presumption vanishes, what the court must do, and what Judge Pope joy did in this case is evaluate the evidence from both parties during the evidentiary phase, as if the presumption never existed. Presumptions are never indulged in against established facts, there were established facts here at trial, and the bubble burst. Once Mr gutman was cross examined and Mr gutman admitted that there was no type of plan concrete hypothetical, or even conceptual for economic development of this property. In fact, I would say the bubble more than burst, it exploded. There was simply an overwhelming amount of evidence in this case that supported that this was a sweetheart deal, similar to the deal that was reached in But the point of suite is that the government cannot come in and take property, because it wants to benefit a private party. And that's what Judge Pope joy found here, and the lens with which this court looks at that finding is is not a trial de novo. The lens with which this court looks at that finding is, was there evidence to support it and did he believe it was highly probable that what that was the case, and Judge Pope joy's decision in that regard is well reasoned and correct. And the only way that this court can overrule that decision is to determine that no reasonable person could could could could agree with that finding based on the evidence that was presented. And so I would urge the court to read the transcript. I would say that's a very good summary because your time is up so if you want to finish that you may do so and then your time will conclude. Thank you very much. So I will just wrap up very quickly and conclude on behalf of the appellees, the Peter bonds, we would ask this court to affirm the trier of facts findings on the evidence in this case that it was highly probable that there was not any necessary public purpose for this taking. And we would ask this court to respect as all trier of fact decisions jury bench trial evidentiary hearings are in a court of review and affirm the decision. Thank you very much. Thank you, counsel. All right, Miss Dixon, if you wish to reply you may do so now. Thank you, Justice Hutchison. First, as the defendants themselves point out, an abuse of discretion will be found only where they have set forth evidence to show that it is highly probably true that the city does not need the planned public road identified as roughly road. There was no evidence submitted by the defendants in support of that, that it was highly probably true that the city doesn't need the road. I would refer you to Petra bond one which did a very thorough and thoughtful analysis of the facts submitted at the evidentiary hearing, wherein the court resuscitated that recited the facts that the defendants admitted at trial, none of the defendants testimony did anything to rebut any of the evidence that the city admitted at trial. And to that, I do have to say that the defendants council has taken significant liberties in his recitation of the testimony of our city administrator Michael Gutmann. Mr. Gutmann testified to many facts. First, that the city has legislative authority under the Illinois statutes, the Illinois municipal code to a fire property for a public road. That's exactly what we're doing. No one's taken issue with that. That since 1945 public records indicated that this property was first a public road was called out as a public road, and then the city. And based on public records believe that the road was in the public domain. Conti isn't getting a sweetheart deal as defendants and Judge Pope joy my thing. Where's the sweetheart deal when a Conti is required by the annexation agreement to spend its own money to build a road on behalf of the city of West Chicago. The sweetheart deal may reflect or may refer to if, if we look at all of the evidence that with this road even though it's going to cost some money that 37 acres now becomes much more valuable because instead of one gravel crushing or gravel business that's So there, there is a significant benefit to him, even though he's going to have some upfront cash outlay wouldn't you say, well, it's certainly there's the benefit to the private developer but let's think of the benefit to the city of West Chicago, it was the city of developer to do so, because the city recognized that this 37 acres was to be developed in the city of West Chicago as a business park, the city of West Chicago determined in the annexation agreement that the users of that business park must use this new city roadway which is a full access intercept which became then a full access intersection with North Avenue. It was the city that was driving this the whole time. It's the city who determined that the development of 37 acres commanded this kind of this type of a roadway. Certainly, the city could have easily said well you've got a roadway a Conti use that but in fact the city said no, we want you to use this roadway this public roadway for entrance and exit. And I do have to say, the city did not offer it, as I, I think I asked before and I just want to make sure I was clear, the city didn't offer any income projections or possible proposals for the property. Even if they were in rudimentary form. None of that was offered at the at the hearing was it. In terms of revenue projections there was not evidence of that, but there was evidence, clearly, at trial, that there was an annexation agreement that transferred the when this property is annexed to the city. It would have come in as residential development by operation of law, the city and the developer entered into a contractual agreement that the property was going to be developed in conformance with the city's comprehensive plan. It was going to be a major manufacturing development, it was going to offer a business part which was going to bring in more money, obviously more money to the city as the park develops. In this case defendants rely on the city of Chicago versus Eichner case they cite that as did Judge Popejoy. And as I pointed out in my brief, this case is absolutely 100% not on point, because in Eichner, again, you had the condemning authority which was the city condemning private property to transfer that title of that private property to another private property owner to assist in the development of that second private property owners development. Now, the key to Eichner really is that that acquisition was undertaken under state law, which is the tax increment allocation redevelopment act. When that act is at play the city is to have an understanding of the economic development to be derived from development of property. There's no similar requirement on a city, when you're going to build a public road. So, when Eichner says, you should look to the determination of whether there's a good sound economic development plan. That makes sense because if you're going to take private property from one owner and give the private property to another private property developer, you want to make sure that there is some economic benefit that's going to be derived here. What the city is doing is realizing long held belief that this property was in the public domain, that it was going to serve as a public roadway to serve both the development of the area, the residents, the business owners, the employees, anyone coming into this area, a free and unfettered use of this public roadway. From that, there is just absolutely no evidence that this was some sweetheart deal solely for Conti or that the city of West Chicago abused its discretion in determining that the road was necessary to serve the city in this area. And based on that, I fully believe that the trial court did its decision is clearly against the manifest way to the evidence. There was absolutely no evidence to submitted a trial that it was highly probably true that the city didn't need the roadway. Review of Petrobon one paragraphs 24 to 27 sets forth what the defendants presented at trial. And basically what they said is, hey, this rec we rode is a private drive serving our property. Okay, that might be true. They testified to the development that a Conti was making to its land. That might be true as well. But what did, if you look at the evidence admitted by the defendants. There is not a single shred of evidence that would show the city abused its discretion in determining to acquire this property for a private or for a public road. Nothing. In fact, what you do have is the road appears on a comprehensive plan, the comprehensive plan shows the development that's to occur in this area, the road is shown on a zoning map for the city which highlights what the zoning is to be in this area. The annexation agreement with a Conti states, clearly what the zoning of the property is going to be which shows what the development of the property is going to be that there's 37 acres that are going to be under development for a business part 37 acres of development that could use this public road that the road is going to be 16 or 66 feet. The road right away 66 feet wide it's 1400 feet long. It's clear to in one of the important points is that I got another governmental entity thought this road as well as in the public domain. So now we have something that developers craves the full access interchange with North Avenue. This will drive development in the area. I see my time is up, but I do want to. I want to thank the court for taking the time to hear this case again. I would, I would ask that in review of the information provided in the briefs that the court realized that the trial court did not do what this court asked it to do on remand which was to clarify the, that the proper burden had been placed on the defendants that clear and convincing evidence be submitted to it, from which it could determine that the city of West Chicago abused its discretion in determining to acquire the property for a public road, and because it did not do that. The determination by the trial court is against the manifest way to the evidence, and on that basis we would ask this court to reverse the trial courts decision to allow the case to proceed in the trial court for evaluation of the property and to allow the city of West Chicago to continue its obligation to the people of the city to acquire the property for a public road. All right, thank you very much mystics and for your argument as well, Mr Simpson for yours. We will take this matter under advisement we will render a decision in due course, we're going to now recess, so we can prepare for our next argument everyone have a nice day, and let's hope there is no snow coming. Thank you. Thank you. You as well. Thank you.